IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NELETA SMITH                          :

                                         :

     v.                                  :   Civil Action No. DKC 12-0316

                                         :

WASHINGTON SUBURBAN SANITARY
COMMISSION                            :

## MEMORANDUM OPINION

Presently pending and ready for review in this employment discrimination case is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Washington Suburban Sanitary Commission ("WSSC") with respect to Count V of Plaintiff Neleta Smith's complaint (ECF No. 17).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, WSSC's motion will be denied.

## I.   Background

### A.   Factual Background

Plaintiff Neleta Smith alleges the following facts in her first amended complaint.  (ECF No. 15).  In June 2001, WSSC hired Plaintiff, an African American female, as an Account Clerk I.  In June 2005, WSSC terminated Smith.  Smith exercised her statutory right to appeal her termination to the Maryland Office of Administrative Hearings ("OAH"), and an administrative law judge ordered WSSC to reinstate Smith and provide back pay.

WSSC unsuccessfully appealed the administrative law judge's ruling to the Circuit Court for Prince George's County.

When Smith returned to work in 2007, WSSC "[i]mmediately began taking actions to cause her to be removed." (*Id.* ¶ 6). Specifically, WSSC subjected Smith to a hostile work environment in which co-workers referred to dark-skinned African Americans as "niggers," "jungle bunnies," and "darkies." (*Id.* ¶ 7). Smith initially reported these statements to her supervisor in July 2008 and made "repeated complaints about the racially discriminatory work environment" thereafter. (*Id.*). Instead of investigating the remarks, Smith's supervisor told her that "you are the problem around here and if you don't like what's going on maybe you should look for another job." (*Id.*). Smith also allegedly endured harassment by her WSSC supervisors because of her approved use of sick leave pursuant to the Family and Medical Leave Act ("FMLA"). In addition, WSSC issued Smith "marginal and poor performance appraisals, accus[ed] her of misconduct, and singl[ed] her out for disparate treatment and discipline." (*Id.* ¶ 6).

Purportedly in retaliation for complaining about the derogatory racial slurs, Smith's co-workers and supervisor "began making false complaints about Plaintiff's work performance and behavior." (*Id.* ¶ 10). As a result, WSSC disciplined Plaintiff in December 2009 and placed her on a

Performance Improvement Plan in May 2010.  In January 2011, WSSC terminated Smith for a second time because a WSSC employee "claimed that Ms. Smith sneezed or coughed on her." (*Id.* ¶ 6).

**B.   Procedural Background**

In 2009, Smith filed an EEOC complaint alleging race and color discrimination, as well as retaliation.  After her termination in January 2011, Plaintiff amended her EEOC complaint to include a charge of retaliatory termination.  The EEOC issued a right-to-sue letter in November 2011.

On February 1, 2012, Plaintiff filed her complaint in this court, alleging counts for disparate treatment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; violations of 42 U.S.C. § 1981; abusive discharge; and violations of the FMLA.  Smith seeks monetary damages, including back pay and front pay; a declaration that WSSC violated her rights under Title VII and 42 U.S.C. § 1981; reinstatement; and litigation costs, including attorneys' fees and expert fees.

On April 27, 2012, WSSC filed a partial answer to the complaint (ECF No. 8) and a motion for partial dismissal, arguing that Plaintiff's abusive discharge count failed to state a claim upon which relief could be granted (ECF No. 9).  On the same day, a scheduling order was issued.  (ECF No. 10).  After seeking and receiving leave to do so, Plaintiff filed an amended

3

complaint on June 12, 2012.  (ECF No. 15).  Specifically with respect to her abusive discharge claim, Smith now alleges that (1) discharging an employee who exercises a statutory right or privilege violates public policy under Maryland law; (2) Md. Code, Publ. Utilities Art. § 18-123 provides WSSC employees with a statutory right to appeal any termination to the OAH; and (3) WSSC terminated her a second in time in 2011 "because she exercised her statutory right to appeal her termination to OAH, was successful on her appeal, and was reinstated." (ECF No. 15, at 6-7).[1]

On June 26, 2012, WSSC filed a partial answer to the amended complaint (ECF No. 16) and a partial motion to dismiss or, in the alternative, for summary judgment on Smith's abusive

---

[1]  Md. Code, Publ. Utilities Art. § 18-123 provides as follows:

> In general
> (a) A[ WSSC] employee may not be permanently removed except for cause and after an opportunity to be heard.
>
> Appeals
> (b) A[ WSSC] employee who is permanently removed may appeal to the Office of Administrative Hearings in accordance with § 4-401 of the State Personnel and Pensions Article.
>
> Restrictions on removal
> (c) A[ WSSC] employee may not be permanently removed from the merit system because of religious or political opinions or affiliations.

discharge count (ECF No. 17).   Smith filed an opposition to the motion (ECF No. 21), and WSSC filed a reply (ECF No. 22).

## II.   Standard of Review

### A.   Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).   A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, unsupported legal

allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

   **B.   Summary Judgment**

   Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**III. Analysis**

Maryland recognizes a common law cause of action for abusive discharge for employees who can demonstrate that their former employer's motivation for discharging them contravened a clear mandate of public policy. *Adler v. Am. Standard Corp.*, 291 Md. 31, 39–41 (1981) (establishing the tort for at-will employees); *Ewing v. Koppers Co., Inc.*, 312 Md. 45, 49 (1987) (extending the cause of action to "all employees, at will and

contractual"). Maryland courts generally have concluded that a clear mandate of public policy exists only where an employee has been discharged for: (1) refusing to violate the law; (2) performing an important public function; or (3) exercising a legal right or privilege. *Makovi v. Sherwin-Williams, Co.*, 316 Md. 603, 610 (1989). To state a claim for abusive discharge, an employee must allege that: (1) she was discharged; (2) her discharge violated a clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See King v. Marriott Int'l, Inc.,* 160 Md.App. 689, 700 (2005).

Smith's abusive discharge count alleges that WSSC terminated her in 2011 in retaliation for exercising her right under Md. Code, Publ. Utilities Art. § 18-123 to appeal her earlier 2005 termination. Such a claim appears to fall squarely within the third category of cases identified in *Makovi*, *i.e.*, those cases "involving employees discharged for exercising a legal right or privilege." *Makovi*, 316 Md. at 611 (summarizing the three categories of cases identified in *Adler*).[2] WSSC does

---

[2] In *Makovi*, the Maryland Court of Appeals noted that this third category of abusive discharge cases "is represented by" two extra-jurisdictional decisions summarized in *Adler*: (1) *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3[d] Cir. 1979), where an employee was discharged for refusing to submit to a polygraph despite a statute making it a crime to require a lie detector test as a condition of employment, and (2) *Frampton*

not dispute that firing a WSSC employee for exercising her statutory right to appeal a termination would violate a clear mandate of public policy.[3]   Instead, WSSC seeks dismissal of Smith's abusive charge claim on two other grounds.   First, WSSC argues that section § 18-123 contains its own enforcement mechanism to remedy Plaintiff's alleged injury, which obviates the need to recognize a separate cause of action for abusive discharge.  (ECF No. 17-1, at 4-6).   Second, WSSC asserts that Smith cannot establish the requisite causal connection between exercising her right to appeal her first termination and WSCC's decision to terminate her a second time.  (*Id*. at 6-8).   Each of WSSC's arguments will be addressed, in turn.

---

*v. Central Indiana Gas Co.*, 260 Ind. 249, 297 (1973), where an employee was fired in retaliation for filing a workers' compensation claim, despite having a clear statutory right to do so.  *Makovi*, 316 Md. at 611.

[3] Notably, WSSC also does not argue that the tort of abusive discharge is unavailable to public employees who, like Smith, are afforded the protections of a civil service system.   In *Ewing v. Koppers Co., Inc.*, a case involving a union employee who served pursuant to a collective bargaining agreement, the Maryland Court of Appeals explicitly recognized that the cause of action "exists in favor of employees who serve under contract as well as those who serve at will" and, in doing so, implicitly rejected the union's argument that "there is no need to recognize a tort in favor of those employees who are fortunate enough to enjoy contractual *or other protection*."  *Ewing*, 312 Md. at 50 (emphasis added).

A.    Availability of a Civil Remedy

In *Adler*, the Maryland Court of Appeals recognized the tort of abusive discharge as a judicial exception to the common law doctrine of at-will employment but made clear that the tort is available only in "proper case[s]."  *Adler*, 291 Md. at 43.   To that end, in *Makovi*, the court clarified that the tort will not lie where "the public policy violated by the discharge arises from a statute that provides its own remedy for the violation." *Insignia Residential Corp. v. Ashton*, 359 Md. 560, 561-62 (2000) (citing *Makovi*, 316 Md. at 626).    The Fourth Circuit has explained the rationale for this limitation as follows: "[w]here the public policy foundation for the wrongful discharge is expressed in a statute, and that statute already contains a remedy for vindicating the public policy objectives, then judicial recognition of a wrongful discharge [tort] is considered both redundant and inappropriate."  *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 774 (4th Cir. 1998); *see also Makovi*, 316 Md. at 626 (where a statute "create[s] both the right, by way of an exception to the terminable at-will doctrine, and remedies for enforcing that exception . . . the generally accepted reason for recognizing the tort, that of vindicating an otherwise civilly unremedied public policy violation, does not apply").

Here, WSSC contends that Smith's abusive discharge claim fails because section 18-123 contains "its own enforcement mechanism" – namely, the ability for a WSSC employee to appeal any termination to an administrative law judge to determine whether the removal was "for cause." (ECF No. 17-1, at 4-6; ECF No. 22, at 2-4). Because Smith unsuccessfully appealed her 2011 termination pursuant to section 18-123, WSSC maintains that she should be barred from relying on the "general umbrella of abusive discharge" based on *Makovi* and its progeny. (ECF No. 17-1, at 6; *see also* ECF No. 17-2, Decision in *Smith v. Was. Sub. Sanitary Comm'n*, OAH No. WSSC-PERS-01-11-43288).[4] Plaintiff rejoins that section 18-123 does not provide a remedy for the situation presented in this case, where a WSSC employee is purportedly terminated in retaliation for successfully pursuing an appeal of an earlier termination. In Smith's words, "[t]he statute does not contemplate the issue at hand, where one wins the termination proceeding and is reinstated, only to be terminated again." (ECF No. 21, at 6).

_____

[4] It is appropriate to take judicial notice of "matters of public record" when resolving a Rule 12(b)(6) motion to dismiss. *Clark v. BASF Salaried Emps.' Pension Plan*, 329 F.Supp.2d 694, 697 (W.D.N.C. 2004), *aff'd as modified by* 142 F.App'x. 659 (4th Cir. 2005); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). For this reason, the OAH decision upholding Smith's 2011 termination – which WSSC includes as an exhibit to its motion (ECF No. 17-2) – can be considered at this stage.

Despite its surface appeal, WSSC's reliance on *Makovi* is misplaced. The appeal provided for in section 18-123 is available to all WSSC employees and is not designed to be a mechanism for remedying retaliation that results from pursuing such an appeal in the first instance. Indeed, construing it as such would be circular. Hence, this case is readily distinguishable from those where courts apply *Makovi* based on the availability of an enforcement mechanism that was specifically *created* to provide redress for retaliation. *See, e.g.*, *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 494 (1990) (where employee was allegedly terminated for reporting violations of state and federal minimum wage laws, his claim for abusive discharge was barred by *Makovi* based on the provision of the Fair Labor Standards Act that provides specific remedies for anyone who is discharged in retaliation for filing such a complaint).

An appeal pursuant to section 18-123 also does not function, in practice, to remedy a retaliatory termination when a WSSC employee exercises the right for a second time. Here, for example, Smith notes that she was not allowed to "claim retaliation" during her second appeal. (ECF No. 21, at 6 & n. 1). The administrative law judge apparently refused to hear any testimony regarding her prior termination, and Smith was limited to contesting "the stated factual basis of her termination."

(*Id.*).   Thus, unlike *Makovi*, this case involves an alleged violation of public policy that is "otherwise civilly unremedied" and is therefore analogous to the cases cited by Smith in her opposition.   *See Magee v. DanSources Tech. Servs., Inc.*, 137 Md. App. 527, 572  (2001) (employee who was fired for refusing to defraud a health care benefit program could sustain an abusive discharge claim because the relevant criminal statute does not provide any "civil remedy that would provide . . . redress for [retaliatory] adverse employment actions"); *Hoffman v. Baltimore Police Dep't*, 379 F.Supp.2d 778, 789 (D.Md. 2005) (employee who was discharged for exercising his rights under the Maryland Public Information Act could pursue an abusive discharge claim because although the statute provided certain civil remedies to a member of the public who has been wrongfully denied access to documents, it did not provide a mechanism for seeking redress for a retaliatory termination).

In sum, because section 18-123 does not contain any mechanism for remedying the type of retaliatory discharge that Smith alleges in her complaint, the rule announced by the Maryland Court of Appeals in *Makovi* does not foreclose Smith's abusive discharge claim.   WSSC's motion to dismiss will be denied to the extent it seeks relief on this basis.

### B.   Causal Nexus

As noted above, to prevail on an abusive discharge claim, an employee must allege and prove a nexus between the employee's conduct and the employer's decision to terminate her. *Marriott Int'l, Inc.*, 160 Md.App. at 700.   WSSC contends that Smith's claim fails to satisfy this element because of (1) the lack of temporal proximity between Smith's post-appeal reinstatement in 2007 and her second termination in 2011; and (2) the evidence showing that WSSC discharged Smith for deliberately coughing "in and onto her supervisor's face." (ECF No. 17-1, at 7).

At this stage, judgment in favor of WSSC on Smith's abusive discharge claim is not warranted based on either of these grounds.   As to WSSC's first argument, time is certainly important when deciding whether there is a nexus between a protected activity and an adverse employment action.   The existence of a causal connection can be readily inferred "where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).   Conversely, "the passage of time . . . tends to negate the inference of [retaliation]." *Id.*   Time, however, does not stand alone, as it is appropriate to "look to the intervening period for other evidence of retaliatory animus" in cases lacking temporal

proximity. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotation marks and citations omitted).

Here, the complaint alleges that WSSC reinstated Smith in 2007 following her successful administrative appeal and then terminated her for a second time in 2011. (ECF No. 15 ¶¶ 5, 10). The lengthy period of time between these two events certainly tends to negate any inference of retaliation. Yet, as Smith notes, the complaint also alleges numerous facts to "bridge th[is] gap" (ECF No. 21, at 8), including that WSSC "[i]mmediately . . . began taking actions to cause [Smith] to be removed" after she was reinstated in 2007 by, *inter alia*, issuing her negative performance reviews and accusing her of misconduct (ECF No. 15 ¶ 6). Construed in the light most favorable to Smith, these allegations satisfy Plaintiff's burden under Rule 8(a) with respect to the causal nexus requirement of an abusive discharge claim.[5]

WSSC alternatively seeks summary judgment, apparently arguing that the evidence establishes that WSSC terminated Smith for coughing on her supervisor and therefore disproves the causal connection alleged by Plaintiff. (ECF No. 17-1, at 7).

---

[5] Because WSSC relies solely on the allegations in Smith's complaint to support its lack-of-temporal-proximity argument, this portion of its motion will be construed only under Fed.R.Civ.P. 12(b)(6).

In support of its argument, however, WSSC cites only the decision of the administrative law judge, who concluded that Smith was terminated for cause. (*Id.*). Given the undeveloped state of the record and because Smith's other claims – each of which is factually intertwined with the abusive discharge count – are still pending, WSSC's argument will not be considered at this time.[6]   Instead, WSSC's alternative motion for summary judgment on Smith's abusive discharge claim will be denied without prejudice to renewal if WSSC files a dispositive motion as to Plaintiff's other claims at some point in the future.

## IV.  Conclusion

For the reasons above, the motion to dismiss or, in the alternative, for summary judgment filed by Defendant Washington Suburban Sanitary Commission will be denied.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[6] The admissibility and the preclusive effect (if any) of the administrative law judge's decision will not be addressed in the instant memorandum opinion.